No. 21-2630

UNITED STATES COURT OF APPEALS FOR THE THIRD CIRCUIT

EUGENE MAZO and LISA MCCORMICK,

*Plaintiffs – Appellants,*

v.

TAHESHA WAY, in her official capacity as New Jersey Secretary of State, CHRISTOPHER DURKIN, in his official capacity as Essex County Clerk, E. JUNIOR MALDONADO, in his official capacity as Hudson County Clerk, JOANNE RAJOPPI, in her official capacity as Union County Clerk, PAULA SOLLAMI COVELLO, in her official capacity as Mercer County Clerk, ELAINE FLYNN, in her official capacity as Middlesex County Clerk, and STEVE PETER, in his official capacity as Somerset County Clerk,

*Defendants – Appellees*

Appeal from the United States District Court
for the District of New Jersey
Newark Division
No. 20-cv-8174

**Brief of Professor Derek T. Muller and Professor Michael R. Dimino as *amici curiae* in support of reversal**

WALTER S. ZIMOLONG III
ZIMOLONG LLC
353 West Lancaster Avenue, Suite 300
Wayne, PA 19087
(215) 665-0842
wally@zimolonglaw.com
*Counsel for Amici Curiae*

# TABLE OF CONTENTS

TABLE OF AUTHORITIES ........................................................................i

INTEREST OF *AMICI CURIAE* ............................................................ 1

SUMMARY OF ARGUMENT ................................................................. 1

ARGUMENT ......................................................................................... 2

I.  Political expression is core First Amendment activity. ...................... 2

II. New Jersey's ballot slogan law creates a forum for political expression. ....................................................................................................... 5

III.New Jersey may only regulate the content of candidates' speech on the ballot if the regulation is narrowly tailored to a compelling interest. .................................................................................... 9

IV. The *Anderson-Burdick* framework is not appropriate for rules regulating pure political speech in a forum created by the state for candidates to distinguish themselves to voters. ................................. 12

CONCLUSION ..................................................................................... 19

CERTIFICATE OF BAR MEMBERSHIP ............................................... 20

CERTIFICATE OF COMPLIANCE ......................................................... 21

# TABLE OF AUTHORITIES

## Cases

*Arizona v. Inter Tribal Council of Arizona, Inc.* 570 U.S. 1 (2013) .......... 6

*Brody By and Through Sugzdinis v. Spang*, 957 F.2d 1108 (3d Cir. 1992) ................................................................................................ 10

*Buckley v. Valeo*, 424 U.S. 1 (1976) ........................................................ 2

*Burdick v. Takushi*, 504 U.S. 428 (1992) .............................................. 13

*Burson v. Freeman*, 504 U.S. 191 (1992) ........................................... 3, 4

*Cook v. Gralike*, 531 U.S. 510 (2001) ........................................................ 9

*Crawford v. Marion County Election Board*, 553 U.S. 181 (2008) ......... 14

*Democratic-Republican Org. of N.J. v. Guadagno*, 900 F.Supp.2d 447 (D.N.J. 2012), *aff'd*, 700 F.3d 130 (3d Cir. 2012) ................................. 17

*Gregoire v. Centennial School Dist.*, 907 F.2d 1366 (3d Cir. 1990) ........ 10

*International Soc. for Krishna Consciousness, Inc. v. Lee*, 505 U.S. 672 (1992) ...................................................................................................... 10

*Kreimer v. Bureau of Police for Town of Morristown*, 958 F.2d 1242 (3d Cir. 1992) ................................................................................................ 10

*Mazo v. Way*, 2021 WL 3260856 (D.N.J. July 30, 2021)............. 14, 15, 17

*McCutcheon v. Federal Election Commission*, 572 U.S. 185 (2014) (plurality opinion) ..................................................................................... 4

*McIntyre v. Ohio Elections Commission*, 514 U.S. 334 (1995) ... 3, 4, 8, 13

*Meyer v. Grant*, 486 U.S. 414 (1988) ......................................................... 3

*Minnesota Voters Alliance v. Mansky*, 138 S.Ct. 1876 (2018) ................. 4

*Perry Educ. Ass'n v. Perry Local Educators Ass'n*, 460 U.S. 37 (1983) .. 11

*Pleasant Grove City v. Summum*, 555 U.S. 460 (2009) .......................... 10

*Smiley v. Holm*, 285 U.S. 355 (1932) ........................................................ 5

*Timmons v. Twin Cities Area New Party*, 520 U.S. 351 (1997).. 11, 14, 15

*U.S. Term Limits, Inc. v. Thornton*, 514 U.S. 779 (1995)......................... 6

*Williams v. Rhodes*, 393 U.S. 23 (1968) ................................................. 16

## Constitution and Statutes

N.J.S.A. § 19:13-4 ...................................................................................... 17

N.J.S.A. § 19:23-17 .......................................................................... 8, 15, 16

NEW JERSEY LAWS OF 1930 ......................................................................... 7

NEW JERSEY LAWS OF 1936 ......................................................................... 7

NEW JERSEY LAWS OF 1944 ......................................................................... 8

U.S. CONST. art. I, § 4, cl. 1 ......................................................................... 5

U.S. CONST., amend. I ................................................................................. 2

**Other Authorities**

Derek T. Muller, *Ballot Speech*, 58 Ariz. L. Rev. 693 (2016)................ 1, 6

## INTEREST OF *AMICI CURIAE*[1]

Derek T. Muller is a professor of law at the University of Iowa College of Law. He teaches and writes about election law and federal courts, and he has an interest in the resolution of this case within the appropriate legal framework. Portions of this argument are drawn from his article, *Ballot Speech*, 58 ARIZ. L. REV. 693 (2016).

Michael R. Dimino is a professor of law at Widener University Commonwealth Law School. He teaches and writes about election law and constitutional law, and he has an interest in the resolution of this case within the appropriate legal framework.

## SUMMARY OF ARGUMENT

New Jersey creates a forum for political speech on the ballot where candidates can communicate with voters and distinguish themselves from other candidates. By law, however, New Jersey prohibits candidates from using "the name of any person or any incorporated association" in

---

[1] The University of Iowa College of Law and Widener University Commonwealth Law School are not signatories to this brief, and the views expressed here are solely those of *amici curiae*. These universities provide financial support for faculty members' research and scholarship activities, support that helped defray the costs of preparing this brief. The parties consented to this filing.

New Jersey without consent. The district court erred when it refused to apply strict scrutiny under the First Amendment to New Jersey's ballot slogan law. The ballot slogan law creates a forum for political expression at the core of the First Amendment, and the law only passes constitutional scrutiny if New Jersey can demonstrate that the law is narrowly tailored to a compelling interest.

## ARGUMENT

### I. Political expression is core First Amendment activity.

"Discussion of public issues and debate on the qualifications of candidates are integral to the operation of the system of government established by our Constitution. The First Amendment affords the broadest protection to such political expression . . . ." *Buckley v. Valeo*, 424 U.S. 1, 14 (1976) (per curiam). Supreme Court cases routinely ensure that political expression secures the highest level of protection under the First Amendment. U.S. CONST., amend. I.

In *McIntyre v. Ohio Elections Commission*, 514 U.S. 334 (1995), the Supreme Court considered the constitutionality of an Ohio law that prohibited the distribution of anonymous election leaflets. Margaret McIntyre was fined for anonymously printing and distributing some

leaflets opposing a referendum on a new school tax. *Id.* at 337. The Court emphasized that the Ohio statute at issue "is a regulation of pure speech." *Id.* at 345. Regulations of "pure speech," according to the Court, are limitations on political expression "subject to exacting scrutiny." *Id.* at 346.

The precedents on which *McIntyre* relied rejected alternative tests that would have subjected political speech to a lower level of scrutiny. And they did so in cases, like the present one, that involved state election laws that regulated pure speech. In *Meyer v. Grant*, 486 U.S. 414 (1988), for instance, the Court applied strict scrutiny when it examined an election law that prohibited paying petition circulators for gathering signatures to put an initiative on the ballot. Under that exacting standard, the Court found the law unconstitutional: proponents of a ballot initiative have a First Amendment right to express themselves to prospective petition signers, even if they pay circulators to disseminate that message. *Id.* at 420–23.

And in *Burson v. Freeman*, 504 U.S. 191 (1992), a majority of the Court used strict scrutiny when considering the constitutionality of a law forbidding campaign-related speech within 100 feet of a polling place. *Id.*

at 210–11. The Court ultimately found the ban on electioneering permissible, because the right to free speech ran into "the right to cast a ballot in an election free from the taint of intimidation and fraud." *Id.* at 211.

More recently, the Supreme Court decided *Minnesota Voters Alliance v. Mansky*, 138 S.Ct. 1876 (2018). Minnesota prohibited any person from wearing "political" apparel in the polling place on Election Day. The polling place, the Court concluded, was a "nonpublic" forum, "government-controlled property set aside for the sole purpose of voting." *Id.* at 1886. States can ensure that there is not "partisan discord" in the voting booth that may "distract" from voting, as the Court held in *Burson*. *Id.* at 1888. But a content-based ban restricting political speech must satisfy strict scrutiny, *id.* at 1885–86, and Minnesota's broad statute prohibiting "political" apparel did not survive that scrutiny, *id.* at 1890–92.[2]

---

[2] The Supreme Court has elsewhere explained that "exacting scrutiny" looks like "strict scrutiny." *See McCutcheon v. Federal Election Commission*, 572 U.S. 185, 197 (2014) (plurality opinion). *Accord McIntyre*, 514 U.S. at 347–48 (describing "exacting scrutiny" applying when "[n]o form of speech is entitled to greater constitutional protection" and calling it "the strictest standard of review").

*McIntyre*, *Meyer*, *Burson*, and *Mansky* each involved "pure speech," avowedly First Amendment-protected expressive activity. Voters' and candidates' opportunities to speak about contested political topics merits the highest protection under the Constitution. The rules at issue were subject to strict scrutiny.

The same is true for New Jersey's ballot slogan law, which creates a forum for political expression at the very core of the First Amendment.

## II. New Jersey's ballot slogan law creates a forum for political expression.

The State of New Jersey need not allow printed slogans on the ballot. Many states do not have slogans on the ballot. But once New Jersey decided to allow candidates to list a six-word slogan, it created a forum for political expression, a forum for pure speech protected by the First Amendment.

State power to regulate federal elections arises from the Constitution. States may regulate the "manner" of holding congressional elections, power that comes from the Elections Clause, U.S. CONST. art. I, § 4, cl. 1. *See Smiley v. Holm*, 285 U.S. 355, 366 (1932); *U.S. Term Limits, Inc. v.*

*Thornton*, 514 U.S. 779, 805 (1995); *Arizona v. Inter Tribal Council of Arizona, Inc.* 570 U.S. 1, 8–9 (2013).

In early elections in the United States, voters sometimes expressed their preferences viva voce, and at other times by ballot. States did not write the ballot or provide printed ballots to voters. Instead, voters might fill out a blank slip of paper. By the mid-nineteenth century, political parties would print "tickets" for voters to use and cast at the polling place. Muller, *Ballot Speech*, 58 ARIZ. L. REV. 693, 708–09 (2016).

To identify a couple of examples of the content that appeared on these tickets: a 1844 Whig ticket for Henry Clay for president called him "The Glory of his Country, and the first Living Statesman." A "prohibition" ticket in California in 1884 called for voters to "pulverize the rum power." Ballots would display photos of candidates, logos of parties, and messages to voters. *Id.* at 709–14.

When the state took over the printing and distribution of the ballot, it necessarily made choices about what content to include or exclude. These choices had previously been left to private actors or political parties.

The state chooses what to display on the ballot. The ballot gives instructions to the voter. It lists candidates and the offices they are

6

seeking. A candidate's name appears on the ballot. A candidate may choose whether to associate with a political party in a partisan race or to associate with no party. If a candidate affiliates with no party, the ballot may have a blank space or "no party preference" beside the candidate's name. And in a few places, like New Jersey, candidates may add political slogans alongside their names.

The "manner" of holding elections extends to this power to administer the form of the ballot. But the ballot also communicates information between candidates and voters, and there is a distinct First Amendment interest at stake. That First Amendment interest is prominent in New Jersey's ballot slogan law, which offers candidates the opportunity to speak to voters through words on the ballot.

New Jersey's current ballot slogan law traces back to 1930. NEW JERSEY LAWS OF 1930, ch. 187, ¶ 282, § 17, p. 798. The law was amended slightly in 1936. *See* NEW JERSEY LAWS OF 1936, ch. 260, § 1, p. 802.

Neither the 1930 law nor the 1936 law included any qualification or condition on the content of the slogan, apart from the purpose language defining the content of the slogan. That was revised, however, in 1944 to its present form, with a "provided" clause:

7

Any person indorsed as a candidate for nomination for any public office or party position whose name is to be voted for on the primary ticket of any political party, may, by indorsement on the petition of nomination in which he is indorsed, request that there be printed opposite his name on the primary ticket a designation, in not more than six words, as named by him in such petition, for the purpose of indicating either any official act or policy to which he is pledged or committed, or to distinguish him as belonging to a particular faction or wing of his political party; *provided, however*, that no such designation or slogan shall include or refer to the name of any person or any incorporated association of this State unless the written consent of such person or incorporated association of this State has been filed with the petition of nomination of such candidate or group of candidates.

NEW JERSEY LAWS OF 1944, ch. 231, § 1, p. 787.

The statute expressly acknowledges that it is creating a forum for political speech: "for the purpose of indicating either any official act or policy to which he is pledged or committed, or to distinguish him as belonging to a particular faction or wing of his political party." N.J.S.A. § 19:23-17. It creates an opportunity for a candidate to convey a message to voters by means of language on the ballot. It is a regulation of "pure speech." *McIntyre*, 514 U.S. at 345. And not until 1944 did New Jersey condition that speech.

The law allows candidates to "pledge[]" or "commit[]" to an "act or policy." The government has thus created a forum for the private expression of the candidates; it is not the government's slogans that

appear on the ballots, but slogans chosen by the "candidate for nomination."

The law anticipates that candidates will "distinguish" themselves from other candidates, as "belonging" to a "faction" or a "wing" of the political party. The slogans regulated by New Jersey's law are designedly matters of pure speech, activity protected by the First Amendment. The mere fact that they arise in the context of an election does not subject them to lesser scrutiny, as *McIntyre*, *Meyer*, *Burson*, and *Mansky* show. Whether the words appear on a leaflet, a T-shirt a voter wears to the polling place, or on the ballot itself, it is pure speech. *Cf. Cook v. Gralike*, 531 U.S. 510, 530–32 (2001) (Rehnquist, C.J., concurring in the judgment) (finding that a law that placed "pejorative language" on the ballot beside candidates' names "in a way that is not neutral as to issues or candidates" "violates the First Amendment right of a political candidate").

## III. New Jersey may only regulate the content of candidates' speech on the ballot if the regulation is narrowly tailored to a compelling interest.

This content-based speech restriction is subject to strict scrutiny. New Jersey opened up the ballot for candidates to communicate to voters and

differentiate themselves. When the state opens a part of the ballot for expressive activity, the state's regulation must survive strict scrutiny. *See International Soc. for Krishna Consciousness, Inc. v. Lee*, 505 U.S. 672, 678 (1992); *Pleasant Grove City v. Summum*, 555 U.S. 460, 469–70 (2009). Even if the entire ballot is not a forum for speech, courts examine which parts of government-controlled property have been opened for speech, subjecting restrictions on speech to strict scrutiny. *See, e.g., Gregoire v. Centennial School Dist.*, 907 F.2d 1366, 1378 (3d Cir. 1990) (determining that the auditorium of a public high school was a designated public forum); *Brody By and Through Sugzdinis v. Spang*, 957 F.2d 1108, 1120 (3d Cir. 1992) (acknowledging possibility that a graduating ceremony at a public school could be a designated public forum).

A public forum "need not be open to the public at large, but may be opened to a specific class of people or for the discussion of certain subject matter." *Kreimer v. Bureau of Police for Town of Morristown*, 958 F.2d 1242, 1260 (3d Cir. 1992). New Jersey has opened the ballot to political candidates running for office, and those candidates may engage in political speech with prospective voters.

While ballots may not be "*primarily*" "forums of political expression," *Timmons v. Twin Cities Area New Party*, 520 U.S. 351, 363 (1997) (emphasis added), New Jersey's decision to create space on the ballot for candidates' expressive activity to voters creates a forum of political expression. *Cf. Perry Educ. Ass'n v. Perry Local Educators Ass'n*, 460 U.S. 37, 45 (1983) ("The Constitution forbids a state to enforce certain exclusions from a forum generally open to the public even if it was not required to create the forum in the first place.").

New Jersey's limitation on campaign speech—forbidding the use of "the name of any person or incorporated association" of New Jersey without consent—is constitutional only if narrowly tailored to a compelling interest.

This Brief makes no assessment of the analysis of the New Jersey law (e.g., whether names could be used without consent, whether in-state incorporated associations should be treated differently from out-of-state associations, etc.). Instead, it simply argues that the appropriate framework is one of the First Amendment, not *Anderson-Burdick*.

## IV. The *Anderson-Burdick* framework is not appropriate for rules regulating pure political speech in a forum created by the state for candidates to distinguish themselves to voters.

The alternative to the First Amendment framework is the *Anderson-Burdick* balancing test, which the district court erroneously used. Under that test, as Court in *Anderson* explained,

> [a court] must first consider the character and magnitude of the asserted injury to the rights protected by the First and Fourteenth Amendments that the plaintiff seeks to vindicate. It then must identify and evaluate the precise interests put forward by the State as justifications for the burden imposed by its rule. In passing judgment, the Court must not only determine the legitimacy and strength of each of those interests; it also must consider the extent to which those interests make it necessary to burden the plaintiff's rights. Only after weighing all these factors is the reviewing court in a position to decide whether the challenged provision is unconstitutional.

*Anderson v. Celebrezze*, 460 U.S. 780, 789 (1983). The "rights protected by the First and Fourteenth Amendments" are best understood as "associational" rights—how candidates and voters associate with one

another at the ballot box. *See id.* at 791–92 n. 12 & 793–95. "Election laws will invariably impose some burden upon individual voters." *Burdick v. Takushi*, 504 U.S. 428, 433 (1992). Courts are supposed to weigh rules of election administration with this type of balancing.

But not all laws touching on elections are subject to *Anderson-Burdick*. Ohio attempted to defend the law in *McIntyre* as a slight burden on McIntyre's rights under the *Anderson-Burdick* framework. *McIntyre*, 514 U.S. at 344. But the Court rejected the *Anderson-Burdick* balancing test and found it inapplicable: *Anderson-Burdick* applied to "the voting process itself" and cases involving "ordinary litigation" of election laws, such as filing deadlines, ballot access restrictions, and the eligibility of independent voters to vote in primary elections. *Id.* at 344–45. "Ordinary litigation," however, did not apply to McIntyre, who was engaged in political speech—the same type of political speech at issue in this case.

The *Anderson-Burdick* balancing test works for rules that have the effect of *prohibiting* the association between candidates and voters. Consider *Anderson*, which excluded a presidential candidate from the ballot for missing an early filing deadline, *Anderson*, 460 U.S. at 783; or *Burdick*, which forbid write-in candidacies, *Burdick*, 504 U.S. at 430. In

*Crawford v. Marion County Election Board*, 553 U.S. 181 (2008), the Supreme Court used this balancing test to evaluate Indiana's voter identification law for those who found it difficult to obtain a proper identification as a prerequisite to voting.

Appellants' names appear on the ballot, and voters can readily associate with them. Because the district court viewed New Jersey's law through this lens, it is unsurprising that it found the "character and magnitude" of the associational interest not to be "severe." *Mazo v. Way*, 2021 WL 3260856, at * 3 (D.N.J. July 30, 2021). It's why a First Amendment approach, rather than an *Anderson-Burdick* approach, better captures the issues at stake.

The district court stated that its decision to use *Anderson-Burdick* was "guided primarily by the Supreme Court's decision in *Timmons v. Twin Cities Area New Party*, 520 U.S. 351 (1997)." *Mazo*, 2021 WL 3260856, at *11. But that decision does not apply to a case of pure political speech like this one.

In *Timmons*, the Court upheld Minnesota's ban on "fusion" candidacies on the ballot. Multiple parties could not endorse a single candidate and have that endorsement simultaneously appear on the

14

ballot. Parties could endorse candidates, and parties could secure ballot access, but each candidate could only be recognized as the nominee of one party *on the ballot*. The Court concluded that the law passed scrutiny under *Anderson-Burdick*. *Timmons*, 520 U.S at 369–70. The Court also rejected a speech claim: "Ballots serve primarily to elect candidates, not as forums for political expression." *Id.* at 363.

While ballots might "serve primarily to elect candidates," that is not the *only* thing they do. They undoubtedly communicate information to voters. And the State of New Jersey has *expressly* made a choice to designate the ballot as a forum to "pledge[]" or "commit[]" to an "act or policy," to "distinguish" candidates "belonging" to a "faction" or a "wing." N.J.S.A. § 19:23-17.

*Timmons* considered whether multiple political parties could print the same candidate's name on the ballot. That's a distinct interest from candidates' interest in speaking to the public about acts, policies, or political ideology after the state has opened a forum for that purpose.

The district court erred in concluding that "New Jersey's primary ballots . . . are [not] designed to advance Plaintiffs' campaign-adjacent speech." *Mazo*, 2021 WL 3260856, at *11. Respectfully, that is *precisely*

what the ballot slogan law is designed to do—the avowed "purpose" in the very text of the statute is to "pledge[]" or "commit[]" to an "act or policy," to "distinguish" candidates "belonging" to a "faction" or a "wing." N.J.S.A. § 19:23-17. Admittedly, the *entire* primary ballot is not designed as a forum for candidates to engage in political speech. But the six-word slogan portion is such a forum.

Put differently, *Timmons* and *Mazo* both address what words may appear on the ballot. But *Timmons* regulates political party nominations and candidates' choices of associating with one party on the ballot. State regulation of political parties' ballot access is squarely a matter of "the voting process itself." *See, e.g.*, *Williams v. Rhodes*, 393 U.S. 23 (1968) (addressing the opportunity of a new political party's preferred candidates to appear on the ballot).

*Mazo*, in contrast, concerns the ability of candidates to express themselves in the state-designated forum created for the purpose of distinguishing candidates from one another to prospective voters. It is a regulation of "pure speech."

Third Circuit precedent is not to the contrary. The district court argued that it had reached a "similar conclusion" in applying *Anderson-*

*Burdick* in a previous case, *Democratic-Republican Org. of N.J. v. Guadagno*, 900 F.Supp.2d 447 (D.N.J. 2012), *aff'd*, 700 F.3d 130 (3d Cir. 2012). The district court explained, "I applied *Anderson-Burdick* to a State election provision which, like the Slogan Statutes, permits unaffiliated candidates to request a party designation of up to three words, with the caveat they may not use the name of a party whose candidates have already qualified for the ballot, such as 'Democrat' or 'Republican.' *Id.* at 461-63; N.J.S.A. § 19:13-4." *Mazo*, 2021 WL 3260856, at *11.

New Jersey's petition law at issue in *Democratic-Republican* provides, "The petition shall also state in not more than three words the designation of the party or principles which the candidates therein named represent, *but such designation shall not contain the designation name, derivative, or any part thereof as a noun or an adjective of any political party entitled to participate in the primary election.*" N.J.S.A. § 19:13-4 (emphasis added). Because the plaintiff organization was called the "Democratic-Republican Organization," it could use neither the word "Democratic" nor "Republican," because both were existing, recognized parties in New Jersey.

Like *Timmons*, *Democratic-Republican* relates to the association between candidates and political parties. New Jersey's rule that candidates cannot list an existing political party's name on the ballot gets to the heart of ballot access rules: what are the prerequisites for parties and their preferred candidates to appear on the ballot? In *Timmons*, candidates can only associate with one party on the ballot. In *Democratic-Republican*, candidates cannot name another party whose candidates already appear on the ballot.

New Jersey's ballot slogan law, in contrast, is unrelated to political party ballot access rules. It creates a forum for speech and invites candidates to communicate to voters by means of the ballot. And unlike the narrow carve-out in *Democratic-Republican*, which restricted ballot designations based solely on preexisting party access to the ballot, the ballot slogan law at issue here excludes "any person or any incorporated association of this State" from appearing on the ballot without consent. This rule does not relate to political party ballot access. Instead, it regulates pure speech.

# CONCLUSION

*Amici* respectfully submit that this Court should reverse the district court and hold that a strict scrutiny analysis under First Amendment applies when examining New Jersey's ballot slogan law.

Respectfully submitted,

*/s/ Walter S. Zimolong III*
WALTER S. ZIMOLONG III
ZIMOLONG LLC
353 West Lancaster Avenue, Suite 300
Wayne, PA 19087
(215) 665-0842
wally@zimolonglaw.com
*Counsel for Amici Curiae*

December 21, 2021

## CERTIFICATE OF BAR MEMBERSHIP

I certify that I am a member of the U.S. Court of Appeals for the Third Circuit.

/s/ Walter S. Zimolong III

Walter S. Zimolong III

*Counsel for Amici*

Dated: December 21, 2021

# CERTIFICATE OF COMPLIANCE

with type-volume limitation, typeface requirements, and type-style requirements

1. This brief complies with the type-volume limitation of Fed. R. App. P. 32(a)(7)(B) because it contains $3,491$ words, excluding the parts of the brief exempted by Fed. R. App. P. 32(f).

2. This brief complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and the type-style requirements of Fed. R. App. P. 32(a)(6) because it uses Century Schoolbook 14-point type face throughout, and Century Schoolbook is a proportionally spaced typeface that includes serifs.

3. The text of the electronically filed brief is identical to the text in the paper copies that will be provided.

4. The electronically filed brief has been scanned with the most recent version of McAfee and is free from viruses.

*/s/ Walter S. Zimolong III*
Walter S. Zimolong III
*Counsel for Amici*

Dated: December 21, 2021

# CERTIFICATE OF SERVICE

I certify that on the date indicated below, this document was electronically filed with the clerk of the court for the U.S. Court of Appeals for the Third Circuit and served through CM/ECF upon:

Walter M. Luers, Esq.
Park 80 West - Plaza One
250 Pehle Avenue, Suite 401
Saddle Brook, NJ 07663

Ryan Morrison, Esq.
Institute for Free Speech
1150 Connecticut Avenue, N.W.
Suite 801
Washington, DC 20036

Nicole E. Adams, Esq.
Office of Attorney General of New Jersey
Division of Law
25 Market Street
Hughes Justice Complex
Trenton, NJ 08625

Dominic L. Giova, Esq.
Office of Attorney General of New Jersey
Division of Law
25 Market Street
Hughes Justice Complex
Trenton, NJ 08625

Michael L. Dermody, Esq.
Office of County Counsel
County of Hudson
4th Floor
567 Pavonia Avenue
Jersey City, NJ 07306

Moshood Muftau, Esq.
County of Union
Law Department
10 Elizabethtown Plaza
Elizabeth, NJ 07207

Paul R. Adezio, Esq.
Office of County Counsel
County of Mercer
640 South Broad Street
P.O. Box 8068
Trenton, NJ 08650

Anthony P. Seijas, Esq.
Cleary Giacobbe Alfieri & Jacobs
169 Ramapo Valley Road
Upper Level 105
Oakland, NJ 07436

Michael S. Williams, Esq.
Office of Middlesex County
Counsel
75 Bayard Street
Middlesex County Administration
Building, Room 230
New Brunswick, NJ 08901

Alan Ruddy, Esq.
Office of County Counsel
County of Essex
465 Martin Luther King
Boulevard
Hall of Records, Room 535
Newark, NJ 07102

Jessica V. Henry, Esq.
Cleary Giacobbe Alfieri & Jacobs
169 Ramapo Valley Road
Upper Level 105
Oakland, NJ 07436

*/s/ Walter S. Zimolong III*
Walter S. Zimolong III
*Counsel for Amici*

Dated: December 21, 2021